# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KERRY DENNISON,** | : | No. 3:01cv56 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS, SCI-MAHANOY;** | : | |
| **MICHAEL R. YOURON; MARTIN L.** | : | |
| **DRAGOVICH; THOMAS P.** | : | |
| **KOWALSKY; JAMES UNELL;** | : | |
| **and ED KLEM,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the Court for disposition is Plaintiff Kerry Dennison's motion for a new trial. This matter has been fully briefed and is ripe for disposition. For the reasons that follow, we will deny the motion.

**I. Background**

Plaintiff Kerry Dennison was employed by Defendant State Correctional Institute at Mahanoy, Pennsylvania ("SCI-Mahanoy) as a Psychological Services Associate, beginning in November of 1995. Officials at SCI-Mahanoy fired Dennison on June 30, 2000. Defendants Michael R. Youron, Martin L. Dragovich, Thomas P. Kowalsky, James Unell, and Ed Klem were also employees of SCI-Mahanoy, and each supervised Plaintiff in some capacity. At the time of his dismissal, Dennison had reached the level of a Psychological Services Associate 2. Dennison alleges that while he worked at SCI-Mahanoy, the individual defendants continually harassed, intimidated, and threatened him in an effort to force him out of his position. Plaintiff

continues to argue that Defendants took these actions in retaliation for his complaints regarding discrimination in employment practices and parole determinations.[1]

The Equal Employment Opportunity Commission ("EEOC") issued Dennison a right to sue letter on August 3, 2000. On October 26, 2000, Dennison filed the instant complaint, seeking damages and other relief for violations of federal and Pennsylvania law. Count I of his complaint, seeks relief pursuant to 42 U.S.C. §§ 1983, 1984, 1985, and 1988 for the defendants' alleged violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Counts II and III allege that the defendants conspired to violate Dennison's First, Fourth, Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. §§ 1983, 1984, 1985, 1986, and 1988. In Counts IV and V, respectively, Dennison alleges that the defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act, ("PHRA"), 43 PA. CONS. STAT. § 951 et seq. Count VI alleges intentional infliction of emotional distress. Count VII alleges wrongful discharge, and Count VIII seeks damages for violation of the Pennsylvania Whistleblower Law, 43 PA. CONS. STAT. §1421 et seq.

On March 8, 2001, Defendants SCI-Mahanoy and Dragovich filed a motion to dismiss Dennison's complaint against them in its entirety. On June 8, 2001, we dismissed all claims against SCI-Mahanoy except for Dennison's Title VII claim (Count IV), PHRA claim (Count

---

[1] As we write solely for the parties, who should be familiar with the facts of this case, we need not put forth the background facts and the facts elicited during trial in detail. We will discuss the facts relevant to this particular motion in with the requisite specificity in the discussion section.

V), and wrongful termination claim (Count VII). With regard to Defendant Dragovich, we dismissed all of Dennison's claims against him in his individual capacity, and we dismissed all claims against him in his official capacity except for the Title VII (Count IV), PHRA (Count V), and wrongful termination claims (Count VII).

On May 29, 2002, all defendants filed a joint motion for summary judgment on all of Dennison's remaining claims. In support of his opposition to the motion for summary judgment, Dennison submitted an affidavit ("the affidavit") listing over fifty statements, comments, disputes, or complaints that allegedly were the impetus for the defendants' retaliation.

On June 10, 2003, this Court granted the summary judgment motion in part and denied it in part. We granted the motion as to all claims, except we denied the motion for summary judgment on the following claims, each of which relates to retaliation for protected speech:

1. Dennison's section 1983, First Amendment free speech claims against Defendants Youron, Kowalsky, Unell, and Klem concerning verbal protests of discrimination in employment and parole decisions.
2. Dennison's section 1983, First Amendment Petition Clause claims against Defendants Youron, Kowalsky, Unell, and Klem.
3. Dennison's section 1983, First Amendment conspiracy claim against Defendants Youron, Kowalsky, Unell, and Klem.
4. Dennison's Title VII claim against Defendant SCI-Mahanoy seeking relief for alleged retaliation for reporting discrimination in employment determinations.
5. Dennison's PHRA claim against Defendants Youron, Kowalsky, Unell, and Klem seeking relief for reporting alleged discrimination in employment practices.
6. Dennison's whistleblower claim against Defendants Youron, Kowalsky, Unell, and Klem seeking relief for actions other than the distribution of inmate records to unauthorized persons.

The Court's Memorandum and Order Granting in Part and Denying in Part Defendants' Motion

for Summary Judgment (the "summary judgment memorandum") highlighted the specific complaints, grievances, and statements that were protected by the First Amendment and the Whistleblower Law, and provided that the remaining complaints and petitions in the record were not protected. Therefore we held that Dennison would be precluded from presenting evidence of the unprotected complaints and petitions as a basis for his First Amendment and Whistleblower Law claims. (See Doc. 51, Summ. J. Mem. 13 n.9, 14 n.10, 28 n.20).

Regarding the First Amendment Free Speech claims, we held that the First Amendment did not protect Dennison from retaliation for turning over confidential prison documents to individuals outside the prison system because his interest in distributing these materials did not outweigh SCI-Mahanoy's interest in maintaining their confidentiality. (Sum. Judg. Mem. at 10-12). We found, however, that a genuine issue of material fact existed as to whether Dennison's complaints regarding racial discrimination in parole and employment determinations were protected by the first amendment. (Id. at 13). Therefore, we listed those paragraphs of his affidavit that addressed these complaints and held that there was a genuine issue of material fact regarding these complaints only. The remainder of his complaints were not protected by the First Amendment, and therefore, we stated that Dennison would not be permitted to present evidence of these unprotected complaints as a basis for his First Amendment claim. (Id. at 13 n.9).

Similarly, we found that Dennison presented a genuine issue of material fact that he could sustain a First Amendment Petition Clause claim based on his claim that Defendants retaliated against him for filing grievances within sanctioned government channels of redress.

(Id. at 14). Thus, we listed those paragraphs that addressed instances where Dennison presented a petition protected by the First Amendment, and held that Dennison could proceed with these petitions but would not be allowed to advance a First Amendment Petition Clause claim based on evidence of other, non-protected, petitions. (Id.).

Additionally, we found that Dennison could advance a Pennsylvania Whistleblower claim because there was a genuine issue of material fact as to whether the defendants terminated Dennison's employment because he reported instances of discrimination in employment and parole determinations to government officials. (Id. at 28). We held, however, that his reports to individuals outside the prison were not protected by the Whistleblower Law because these individuals were not the proper authorities. (Id. at 28-29). Therefore, we limited the complaints upon which Dennison could base his Whistleblower claim. (Id. at 29).

Subsequently, during a pre-trial conference, we found that the incidents delineated in the summary judgment memorandum are the only incidents of protected speech relevant to Dennison's remaining claims and precluded him from introducing evidence of other speech or petitions. (Pretrial Conference Tr. 4:10-21, March 29, 2004).

A jury trial proceeded on April 14-16 and April 20, 2004. On April 20, the jury returned a verdict in favor of the defendants, finding that no defendant retaliated against Dennison because of his verbal or written complaints, petitions, or reports. (Jury Verdict, April 20, 2004).

Following the verdict, Dennison filed the instant motion for a new trial under Federal

5

Rule of Civil Procedure ("Rule") 59.[2]  Dennison argues that, during trial, this Court erred in three evidentiary rulings and also erroneously required that he display a concealed object to opposing counsel that he intended to reveal to the jury during his closing arguments.  For the reasons that follow, we will deny his motion.

## II.     Standard

An error or defect in a ruling at trial is not grounds for a new trial, "unless refusal to take such action appears to the court inconsistent with substantial justice." FED. R. CIV. P. 61  "In reviewing evidentiary rulings, if we find nonconstitutional error in a civil suit, such error is harmless only 'if it is highly probable that the error did not affect the outcome of the case.'" Becker v. ARCO Chemical Co., 207 F.3d 176, 180 (3d Cir. 2000) (quoting Glass v. Philadelphia Elec. Co., 34 F.3d 188, 191 (3d Cir. 1994)).  Furthermore, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." FED. R. CIV. P. 61

## III.    Discussion

---

[2] Dennison also moves for judgment as a matter of law under Rule 50.  To sustain such a motion, he must demonstrate "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a).  We find that the defendants submitted sufficient evidence for a reasonable jury to issue a verdict on their behalf.  Additionally, a motion for judgment as a matter of law must be made "before submission of the case to a jury." FED. R. CIV. P. 50(a)(2).  As the defendants note, Dennison did not present a motion for judgment as a matter of law until after the verdict was entered.  Therefore, we find that his failure to raise a Rule 50(a) motion prior to submission to the jury waives his right to bring a Rule 50(b) for a renewed motion for judgment following the verdict.  See Williams v. Runyon, 130 F.3d 568, 571 (3d Cir. 1997) ("[F]ailure to raise an issue in a Rule 50(a)(2) motion with sufficient specificity to put the plaintiffs on notice waives the . . .right to raise the issue in [a] Rule 59(b) motion.").

Dennison argues that the Court erred in two ways. First, he argues our decision to require him to reveal to opposing counsel a display he intended to show to the jury during his closing argument was erroneous. Second, he argues that three evidentiary rulings were faulty. We will discuss these issues separately.

### A.   Closing Argument

Immediately prior to his closing argument, Dennison's counsel produced an item covered in a garbage bag. (Trial Tr. 2:6-9, April 20, 2004). After defense counsel requested a sidebar conference, Dennison's counsel explained that the item was a summation of his argument to be presented to the jury. (Id. at 2:10-11). Plaintiff's counsel informed the Court and defense counsel that he fully intended to exhibit the items to the jury. The Court required Dennison's counsel to reveal the item to opposing counsel prior to his argument if he intended to display the item to the jury. (Id. at 2:21-23).

Dennison argues that the Court's ruling severely prejudiced his case because it required that he reveal his closing arguments to opposing counsel prior to making the argument. Nonsense, we disagree, and find that our ruling had no effect on the case. Dennison's counsel was required to reveal his item immediately before his closing argument. Furthermore, defense counsel would have had an opportunity to rebut to Dennison's closing argument regardless of our ruling because Dennison's closing argument preceded that of the defendants. Thus, our ruling provided no unfair advantage to defense counsel and did not affect the substantial rights of the parties. A party's right to examine exhibits that opposing counsel intends to display to the jury is fundamental in jury trials.

**B.     Evidentiary Exclusions**

Dennison also argues that this Court erred by excluding testimony on the following four subjects: 1) Plaintiff's notarized statement that he witnessed Defendant Youron push Steve Demyun (Trial Tr. 32-39, April 14, 2004);  2) notes of a meeting involving Dennison and other members of his department (Id. at 53-55); 3) a memorandum from Defendant Unell regarding the standards and beliefs about the treatment of inmates (Id. at 67-68); and 4) numerous instances of retaliation.

During trial, defense counsel objected to the admission of Dennison's notarized statement that he witnessed Michael Youron push Steve Demyun.  (Id. at pg 32-33).  The notarized statement was not admitted, but Dennison was permitted to present testimony that he had testified, during a prison fact finding hearing and a civil service hearing, that he witnessed Defendant Youron push Steve Demyun.  (Id. at 43-44).  As we noted during trial, the notarized statement did not contain complaints of wrongdoing within the definition of 43 PA.C.S.A. § 1422, and therefore was irrelevant.[3]  (Id. at 35).  Additionally, the content of the statement is cumulative and thus inadmissible because it merely repeats testimony that Dennison was allowed to present during his live testimony.  The statement explains that he witnessed the push, and the statement was provided as part of the prison fact finding. (Pl. Ex. A in Supp. Br. in Opp. Mot. Summ. J.; Pl. Dep. at 136-39).  At trial, Dennison testified that during the prison

---

[3] Wrongdoing is defined as "A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."  43 PA.C.S.A. § 1422.

fact finding he testified about the pushing incident. (Trial Tr. 44-45, April 14, 2004). Thus, although we find no error in the decision to exclude the notarized statement, any potential error was harmless and had no effect on the trial because Dennison was permitted to testify freely about his report that he observed the pushing incident.[4] Therefore, we find that our decision to exclude the statement was not inconsistent with substantial justice.

Next, defense counsel objected to the admission of notes of an April 16, 1998 meeting. As an offer of proof, Dennison's counsel explained that the notes were a follow-up to a March 31st, 1998 meeting. (Id. at 55:6-9). During the March 31st meeting Dennison and his co-workers explained that Defendant Youron had declined to hire three individuals for various improper or racially motivated reasons, and in particular he referred to one applicant as a "towel head from Bangledesh." (Id. at 52-53). Plaintiff's counsel explained that the April 16th meeting was a "follow-up meeting of the meet and discuss concerning the towel memorandum" (Id. at 54:15-19) and stated "it pertains to the towel memorandum" (Id. at 55:6). We find no error in the decision to exclude the notes of the April 16th meeting, as these notes are irrelevant for the purpose offered by Dennison's counsel. The notes of the April 16th meeting contain no discussion of the so called "towel" memorandum, no discussion of Defendant Youron's comments, and no discussion of Defendant Youron's employment decisions. (See Pl. Ex. G in Supp. Br. in Opp. Mot. Summ. J.). Therefore, the April 16, 1998 meeting notes

---

[4] Moreover, Defendants never contradicted Dennison's trial testimony that he testified to this issue during the fact finding and the civil service hearing. They defended their actions by arguing that they did not retaliate against him for his complaints. They did not argue, however, that Dennison never made such a complaint.

were irrelevant for the purpose for which they were offered, and were properly excluded.[5]

The final exclusion at issue relates to a memorandum from Defendant Unell regarding the prison's standards and beliefs about inmate treatment. (Trial Tr. 67-68, April 14, 2004). Defense counsel objected on relevance grounds, and we sustained the objection. (Id. at 68: 1-13). The memorandum at issue listed various standards regarding the treatment of prisoners, including standards emphasizing sensitivity to cultural differences and condemning racial prejudice. (See Pl. Ex. P in Supp. Br. in Opp. Mot. Summ. J.). As an offer of proof, Dennison's counsel stated solely, "I point out we're quoting from a business record." (Trial Tr. 68:14-15, April 14, 2004). We find this offer of proof insufficient to withstand the objection, and further find no error in excluding the document as irrelevant. Dennison never explained the relevance of the document to his case, and the standards of treatment for the inmates were not at issue at trial. Additionally, this exclusion was not inconsistent with substantial justice and did not affect Dennison's rights because he was permitted to testify about the prison's policies regarding discrimination, the precise content of the excluded memorandum. (Id. at 69-70; Trial Tr. 55, April 15, 2004). Furthermore, Dennison was not prejudiced by our ruling to exclude additional, cumulative, evidence of the prison polices because the defendants did not contradict his version of the facts on this issue. At no time did they argue that the prison

---

[5] Furthermore, the exclusion had no effect on the case because Dennison was permitted to testify as to the March 31st meeting and the "towel head" comment and memorandum (Trial Tr. 52-53, April 14, 2005). Moreover, the defendants never challenged that Defendant Youron made these comments and they never disputed the events of the March 31st meeting.

policies permitted discrimination.

Finally, Dennison objects to limitations on evidence of retaliation. He argues that our summary judgment memorandum prejudiced his ability to present his case because it excluded all incidents of retaliation not contained in portions of the record specifically identified by the Court. In support of his present motion, Dennison presents a list of claims and documents that support his retaliation claims, and argues that this Court limited his ability to present this evidence. Dennison argues that we limited his presentation of evidence of the following:

> Deputy Klem had threatened the Plaintiff's career if he was a witness for two (2) of the other counselors (Plaintiff's Exhibit II ¶ 26L). Mr Kowalsky told the Plaintiff that Dragovich would give him desk audits if he would drop his complaints concerning Klem's gay bashing (Plaintiff's Exhibit II; ¶ 26R). Klem also made the counselors write reports in retaliation for the complaints on the nonviolent inmates (Plaintiff's Exhibit II; ¶ 26S). He was told by Youron and Unell on March 12, 1999 that his life would be made a living hell (Plaintiff's Exhibit II; ¶ 26Z). On March 31, 1999, the Plaintiff told Unell that he had filed another EEO complaint (Plaintiff's Exhibit II; ¶ 26BB). He was made to rewrite almost all of his reports. (Plaintiff's Exhibit II; ¶ 26CC). He was required to run additional group sessions from the end of April 1999 up to his termination (Plaintiff's Exhibit II; ¶ 26EE). On April 29, 1999 he was accused of abusing sick leave. (Plaintiff's Exhibit II; ¶ 26GG). In mid-June, 1999, the Plaintiff asked Unell about his desk audit, but was told he was too negative (Plaintiff's Exhibit II; ¶ 26II). On June 11, 1999 Klem gave his a written reprimand and warning. (Plaintiff's Exhibit II; ¶ 26MM). In July 1999, he filed a complaint with the Pennsylvania Human Relations Commission (Plaintiff's Exhibit II; ¶ 26NN). December 1999, he informed Youron that he was going to file a Human Grievance (Plaintiff's Exhibit II; ¶ 26PP).

(Doc. 117, Pl.'s Supplemental Br. in Supp. of his Post Trial Mot. 7-8).

Dennison's argument completely misconstrues the summary judgment memorandum, which placed no limitations on incidents of retaliation. Rather, it held that certain conversations or documents described in his memorandum were not examples of speech or

11

petitions protected either by the First Amendment, Title VII retaliation provisions, or the Pennsylvania Whistleblower Law.  Indeed, during a pre-trial conference the Court emphasized that the limitation in the summary judgment order pertained to "protected speech in certain paragraphs in the Plaintiff's affidavit, and we have already ruled that these are the only incidents of protected speech that are relevant to proving Plaintiff's First Amendment and whistleblower claims."  (Pretrial Tr. 4, March 29, 2004).

Furthermore, Dennison's argument is a gross mischaracterization of the trial proceedings. During trial, opposing counsel never objected to the admission of evidence pertaining to any of the issues listed by Dennison in his brief, and this Court never precluded Dennison from presenting such evidence either before or during trial.  In fact, Dennison personally testified to each one of these matters without any objection from opposing counsel or limitation by the Court.  (See Trial Tr. 59-61, April 14, 2004) (Dennison's testimony that Defendant Klem threatened his career because he was a troublemaker and was testifying in support of Steve Demyun); Id. at 41:20-24 (Dennison's testimony that Mr. Kowalsky informed him that Defendant Dragovich would give him a desk audit if Dennison would drop his complaints); Id. at 71-72 (Dennison's testimony that Youron and Unell informed him on March 12, 1999 that they would make his life a "living hell"); Id. at 78:17-24 (Dennison's testimony that on March 31, 1999, he told Unell that he filed another EEO complaint); Id. at 78:23-24 (Dennison's testimony that he was required to rewrite his reports); Id. at 84:22-23 (Dennison's testimony that he was required to run additional group sessions); Id. at 85-89 (Dennison's testimony that in April 1999 he was improperly placed on a sick leave restriction as a means of

12

retaliation and was accused of abusing the sick leave system); Id. at 73:10-13 (Dennison's testimony that in June 1999 he asked Defendant Unell for a desk audit and a promotion, but Unell informed him that he was overly negative); Id. at 79:14-22 (Dennison's testimony that he filed a complaint with the Pennsylvania Human Relations Commission); Id. at 84:7-20 (Dennison's testimony regarding his Human Grievance complaint filed against Defendant Youron). Therefore, Dennison's assertion that this Court limited the evidence he could present on the issue of retaliation is entirely spurious.[6]

Accordingly, we find that the rulings at trial neither were inconsistent with substantial justice nor affected Dennison's substantial rights, and we will deny Dennison's motion for a new trial or judgment as a matter of law. An appropriate order follows.

---

[6] In support of his motion, Dennison also asserts that our summary judgment memorandum erred in disposing of his section 1985 conspiracy claim and his section 1983 Fourteenth Amendment claim. For reasons discussed in our summary judgment memorandum, we find that no error.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KERRY DENNISON,** | : | No. 3:01cv56 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS, SCI-MAHANOY;** | : | |
| **MICHAEL R. YOURON; MARTIN L.** | : | |
| **DRAGOVICH; THOMAS P.** | : | |
| **KOWALSKY; JAMES UNELL;** | : | |
| **and ED KLEM,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**AND NOW**, to wit, this 12th day of August 2005, Plaintiff's motion for a new trial or in the alternative for judgment as a matter of law (Doc. 94) is hereby **DENIED**.

                                                                **BY THE COURT:**

                                                                **s/ James M. Munley**
                                                                **JUDGE JAMES M. MUNLEY**
                                                                **United States District Court**